UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 20-CV-23705 ALTMAN/GOODMAN

ANTONIO JAVIER CORTAZA,

     Plaintiff,

v.

KILOLO KIJAKAZI[1],
Commissioner of Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON SUMMARY JUDGMENT MOTIONS

This case challenges a denial of social security benefits. Plaintiff Antonio Cortaza and Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Commissioner"), filed cross-motions for summary judgment. [ECF Nos. 22; 25]. The Commissioner's summary judgment motion also served as her opposition response to Cortaza's motion. [ECF No. 26]. Cortaza filed a reply in support of his summary judgment motion [ECF No. 28], which also served as his response to the Commissioner's summary judgment motion [ECF No. 27]. According to the Clerk's

---

[1]    Cortaza's suit was brought initially against Andrew Saul. However, Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit without any affirmative request being made by either party by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

directive in these types of administrative appeals, all dispositive matters have been referred to the Undersigned for a Report and Recommendations. [ECF No. 2].

As explained below, the Undersigned **respectfully recommends** that the District Court **deny** Cortaza's summary judgment motion, **grant** the Commissioner's summary judgment motion, and enter a final judgment in favor of the Commissioner.

## I.    Procedural Background

On March 10, 2016[2], Cortaza applied for supplemental security income, alleging a disability with an onset date of May 1, 2010. (R. 484-93).[3] Cortaza alleges disability due to "[s]eizures," "[h]eart condition," "[s]chizophrenia," "[b]ipolar," "[a]nxiety [d]isorder," and "[d]epression." (R. 536). The Commissioner denied the application initially and on reconsideration. (R. 299; 309). After a hearing on July 10, 2019 (R. 69), Administrative Law Judge Rebecca Wolfe (the "ALJ") concluded that Cortaza was not disabled. (R. 85). The Appeals Council denied review of the ALJ's decision. (R. 1-4). The Commissioner's final decision is now subject to review.

## II.    Factual Background

Cortaza was 26 years old on his alleged disability onset date and 35 years old on the date of the decision. (R. 85; 486). Cortaza has a high school diploma, and no past

---

[2]     The ALJ's decision states that Cortaza applied for disability on February 4, 2016 (R. 69). Neither party raised as an issue this inconsistency in their submissions.

[3]     Citations to ("R. __") refer to pages of the administrative record transcript. [ECF No. 22].

relevant work. (R. 537). At the time of the hearing, Cortaza lived with his parents in his

parents' home. (R. 559). On a normal day, Cortaza lays around, watches tv, eats meals,

and bathes. (R. 560).

## III.   Applicable Legal Standards

### A.   Standard of Review

In evaluating a claim for disability benefits, an ALJ must follow the five steps

outlined in 20 C.F.R. §§ 416.920(a) and 404.1520, which the Undersigned summarizes as

follows:

1.   **Step one**. Is the claimant performing substantial gainful activity? If not, then an ALJ next determines:

2.   **Step two**. Does the claimant have one or more severe impairments? If the claimant does, then an ALJ next considers:

3.   **Step three**. Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled; if not, then an ALJ must determine the claimant's residual functional capacity ("RFC"); and then determine:

4.   **Step four**. Based on the RFC, can the claimant perform his or her past relevant work? If so, then the claimant is not disabled. If the claimant cannot perform his or her past relevant work, then an ALJ must finally determine:

5.   **Step five**. Based on the claimant's age, education, and work experience, and the RFC, can he or she perform other work? If so, then the claimant is not disabled. If not, then the claimant is disabled and entitled to benefits.

*See Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

If an ALJ determines that there is medical evidence establishing the existence of a

substance abuse disorder, then the ALJ must determine whether the substance abuse disorder is a contributing factor which is material to a finding of disability. *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 857 (11th Cir. 2013) ("At step three, if the ALJ determines that a claimant is disabled but also makes a finding that substance abuse is involved, [then] the ALJ 'must determine whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability.'" (quoting 20 C.F.R. §§ 404.1535(a), 416.935(a) (some alterations in original)).

If the ALJ determines that the substance disorder was a contributing material factor, then the ALJ must evaluate which of the claimant's disabling factors would remain absent the substance abuse. *Id.* If, after removing the disabling factors attributed to the claimant's substance abuse, the ALJ determined that the claimant would no longer be disabled, then the claimant's substance abuse is considered to be a "'contributing factor material to the determination of disability,' and [he] has therefore failed to meet [his] burden and prove that [he] is disabled." *Id.* (quoting 20 C.F.R. §§ 404.1535(b)(2)(i) (alteration removed)).

The claimant bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). In reviewing the decision, the Court must consider the record as a whole and determine whether the ALJ applied the correct legal standard and whether substantial evidence in the record supports her findings of fact. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir.

1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips*, 357 F.3d at 1240 n.8 (internal citation omitted). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal citation omitted). And "[i]f the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (internal citation omitted).

The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of an ALJ, with or without remand. 42 U.S.C. § 405(g); *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1302 n.13 (11th Cir. 2000).

## IV.    The ALJ's Findings

In denying Cortaza's claim for benefits, the ALJ followed the sequential five-step evaluation process for social-security claims, including assessing the impact of Cortaza's substance abuse. (R. 69-85). At step one, the ALJ concluded that Cortaza had not engaged in substantial gainful activity since May 1, 2010, the alleged onset date. (R. 72).

At step two, the ALJ concluded that Cortaza had the following severe impairments: epilepsy, depression, substance abuse, anxiety, schizophrenia, hypertension, psychotic disorder, obesity, and right shoulder impairment. (R. 72).

At step three, the ALJ concluded that Cortaza did not have an impairment or

combination of impairments classifiable as a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 72-74). Next, the ALJ determined, based on all of Cortaza's impairments, including his substance abuse disorders, that Cortaza has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl. He can frequently balance. He can frequently reach above shoulder height with both upper extremities. He should have no exposure to hazardous machinery, moving mechanical parts, or unprotected heights. He should not operate a motor vehicle. He can frequently interact with supervisors, coworkers, and the public. He is able to complete simple, routine, repetitive tasks but not at a production rate or pace. He can maintain concentration for at least two hours at a time and would be off task no more than 10% of the work day. Lastly, he would be absent from work more than two times a month.

(R. 74).

At step four, the ALJ concluded that Cortaza has no past relevant work experience. (R. 75).

At step five, the ALJ found that based on the RFC and Cortaza's impairments, including his substance abuse disorders, there are no jobs existing in significant numbers in the national economy that Cortaza can perform. (R. 76).

The ALJ then returned to step two and evaluated whether Cortaza was disabled if his substance abuse disorders were not included. (R. 76). First, the ALJ determined that Cortaza had the following severe impairments: epilepsy, depression, anxiety, schizophrenia, hypertension, psychotic disorder, obesity, and right shoulder impairment. *Id.*

In the repeat of step three, the ALJ concluded that if Cortaza stopped abusing substances, then he would **not** have an impairment or combination of impairments classifiable as a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 76-78). Next, the ALJ determined that, if Cortaza stopped his substance abuse, then he would have the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl. He can frequently balance. He can frequently reach above shoulder height with both upper extremities. He should have no exposure to hazardous machinery, moving mechanical parts, or unprotected heights. He should not operate a motor vehicle. He can frequently interact with supervisors, coworkers, and the public. He is able to complete simple, routine, repetitive tasks but not at a production rate or pace. He can maintain concentration for at least two hours at a time and would be off task no more than 10% of the work day.

(R. 78).

Finally, at the repeat of step five, the ALJ determined that if Cortaza stopped his substance abuse, then there would be jobs existing in significant numbers in the national economy which Cortaza can perform, including Marker, Cafeteria Attendant, and Sales Attendant. (R. 84). Accordingly, the ALJ found Cortaza's substance abuse disorder is a contributing material factor to his disability determination because he would not be disabled if he stopped abusing substances and that, therefore, Cortaza has not been under a disability from May 1, 2010, through the date of the ALJ's decision (August 12, 2019). (R. 85).

V.    **Analysis**

Cortaza raises nine separate grounds, each of which he contends independently support remand. [ECF No. 22]. Before turning to Cortaza's distinct arguments, the Undersigned will summarize certain legal principles which will impact my analysis of many of Cortaza's arguments.

To properly raise an argument, a litigant must support the argument with factual and legal authority. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that simply stating an issue exists, without further argument or discussion, constitutes abandonment of that issue).

Thus, when a litigant raises an argument only generally and fails to offer specific factual contentions or fails to support the argument with legal authority, a court may summarily reject the argument. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 777 (11th Cir. 2016) (treating claimant's perfunctory argument that the ALJ erred by giving great weight to a doctor's testimony as "arguably abandoned"); *United States Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a "perfunctory and underdeveloped argument" with no citation to legal authority and collecting cases); *Gaskey v. Colvin*, No. 4:12-CV-3833-AKK, 2014 WL 4809410, at *7 (N.D. Ala. Sept. 26, 2014) (refusing to consider claimant's argument when claimant failed to explain how the evidence undermined the ALJ's decision); *Severance-Lopez v. Comm'r of Soc. Sec.*, No. 619CV282ORL22DCI, 2019 WL 9047179, at *3 (M.D. Fla. Dec. 2, 2019), report and

recommendation adopted, No. 619CV282ORL22DCI, 2020 WL 1181949 (M.D. Fla. Mar. 12, 2020) (treating argument that RFC was not supported by substantial evidence because the RFC was "not even clear" as waived because the claimant did not explain how the RFC lacked support).

Likewise, a party's failure to meaningfully respond to the opposing party's responsive counterarguments constitutes a concession of the counterargument's persuasiveness. *Conden v. Royal Caribbean Cruises Ltd.*, No. 20-22956-CIV, 2021 WL 4973533, at *7 (S.D. Fla. June 21, 2021) (finding that the defendant conceded counterarguments raised in the plaintiff's response by not addressing the counterargument in its reply); *Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 857 (N.D. Cal. 2020) (the party's failure to address counterarguments in reply constituted abandonment of position taken in initial brief); *W. Flagler Assocs., Ltd. v. City of Miami*, 407 F. Supp. 3d 1291, 1297 (S.D. Fla. 2019) ("The [d]efendant abandoned its argument regarding the [p]laintiff's standing because its [r]eply failed to address any of the [ ] arguments or authority." (alteration added; collecting cases)); *Keepseagle v. Vilsack*, 102 F. Supp. 3d 205, 220 (D.D.C. 2015) (deeming arguments abandoned where the party failed to address in its reply brief the counterarguments raised by the opposing party on the issue).

The Undersigned will now address each of Cortaza's nine grounds for remand and will note where Cortaza has run afoul of either or both of the two previously-

discussed principles concerning the sufficiency and concession of an argument:

**A.**   Ground One

Cortaza contends that the ALJ's decision "cannot stand as drafted because it is internally inconsistent and directly contradictory." [ECF No. 22, p. 6]. Specifically, in Cortaza's view, because "the ALJ [determined] that [Cortaza's] functional abilities are *literally identical* with and without substance abuse, her finding that [Cortaza's] substance abuse is a contributing factor . . . is fundamentally antithetical to her stated facts." *Id.* (emphasis added). However, despite Cortaza's unequivocal claim that the ALJ's substance-abuse RFC and non-substance-abuse RFC are literally identical, he acknowledges later in his argument that the non-substance-abuse RFC does not include the limitation that Cortaza would be absent from work more than two days a month.

Cortaza argues that this distinction is immaterial because the ALJ fails to articulate why she included the limitation in the substance-abuse RFC and not in the non-substance-abuse RFC and fails to indicate whether the distinction "is of any specific significance or otherwise justifies the distinction between her two disability findings." Both arguments are unconvincing.

First, Cortaza cites no legal support for his contention that an ALJ must explicitly articulate the grounds for including an additional limitation in the substance-abuse RFC and not in the non-substance-abuse RFC. Second, as the Commissioner notes in her response, "the [ALJ's] decision thoroughly explains [the more than two days a month of

absences] finding [by] citing [ ] medical/jail records during the relevant period showing drug and alcohol use, with associated effects." [ECF No. 25, p. 12]. In the discussion immediately following the ALJ's first RFC, she discusses the following evidence -- which is not included in her later discussion following the second RFC:

1. Medical records show a history of cocaine, cannabis, and alcohol abuse;

2. In 2011, Cortaza was referred to the emergency room twice due to substance abuse;

3. In 2014, doctors noted drug abuse during a hospital visit;

4. In 2015, Cortaza was seen in the emergency room due to alcohol intoxication;

5. In 2016, Cortaza informed doctors of daily marijuana, cocaine, and alcohol abuse and he had to be treated for alcohol withdrawal;

6. In 2017, Cortaza had to be treated for chest pains following cocaine use and was Baker Acted twice, with doctors noting suspected cocaine and alcohol use;

7. In 2018, Cortaza reported a seizure along with daily alcohol consumption; and

8. In 2019, Cortaza was hospitalized for three days and reported alcohol and marijuana use.

(R. 74-75).

It is not difficult to understand that if Cortaza were hospitalized either due to withdrawal symptoms or due to substance abuse -- as he has been repeatedly -- then it would impact his work attendance. Thus, the reasoning for the ALJ's inclusion of this limitation in only the first RFC is readily apparent based on the RFC-specific discussion.

Further, it is not difficult to understand why the ALJ determined that an individual who would miss "two *or more*" workdays a month would be unemployable and an individual who would not be absent so frequently would be employable. Further SSR 13-2p, cited by the Commissioner, requires only that "[a]djudicators must provide sufficient information so that a subsequent reviewer considering all of the evidence in the case record can understand the reasons for the following findings whenever DAA materiality is an issue." SSR 13-2p.

Cortaza's reply fails to address these arguments raised in the Commissioner's response. [ECF No. 28]. Instead, Cortaza repeats the arguments from his initial motion and accuses the Commissioner of "argu[ing] expansively that the existence of any supporting evidence for the ALJ's decision requires affirmation by the Court." *Id*.

Among the repeated arguments, Cortaza focuses on a statement from RNP Brito in which she opined that Cortaza would likely be absent from work more than four days per month because of his conclusive syncope or epilepsy. This argument fails for two reasons. First, it does not counteract the substantial evidence supporting the ALJ's RFC. Second, this fact would be relevant to an argument as to why the ALJ should have included the work-absence limitation in only the second RFC, not whether, as Cortaza frames his argument, "the ALJ [had] no basis to conclude that [Cortaza's] substance abuse is material" and her disability finding "is self-contradictory, inherently unreliable, and effectively beyond judicial review."

The Social Security Act *precludes* an award of benefits when drug or alcohol abuse is found to be a contributing factor material to the finding of disability. Here, Plaintiff alleged disability during a period in which he was abusing cocaine, alcohol, and marijuana, and -- often as a result -- in and out of jail and the emergency room. The ALJ evaluated Plaintiff's claim, finding that with his substance use impairments, he would be disabled in light of, *inter alia*, the resulting excessive absences from work. The ALJ then went on to find Plaintiff would not be disabled if he had not been using substances during the relevant period.

Accordingly, because Cortaza's argument fails on the merits and because he has not offered any legal support for his contentions concerning what is required from an ALJ when determining whether a substance abuse disorder is material, there is no basis for remand on this ground.

**B.**    Ground Two

Next, Cortaza argues that the ALJ failed to resolve an apparent conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). In Cortaza's view the three jobs provided by the VE, which all require a reasoning level of two or three, are incompatible with the ALJ's RFC limitation of Cortaza to performing "simple, routine, repetitive tasks, not at a production rate or pace." According to Cortaza, reasoning level two jobs require the employee to be able to "understand and carry out 'detailed' written and spoken instructions" and reasoning level three jobs require "an even greater capacity

for understanding and carrying-out [sic] detailed instructions." [ECF No. 22].

In *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018), the Eleventh Circuit concluded that "pursuant to the terms of [Social Security Ruling 00-4p (SSR 00-4p)], and in light of the overall regulatory scheme that governs disability claims, the ALJs within the SSA have an affirmative duty to identify apparent conflicts between the testimony of a Vocational Expert and the DOT and resolve them." Although the *Washington* Court provided insight into the analysis which must be done to determine whether a conflict is "apparent," the Undersigned need not engage in such a fulsome discussion in the instant case.

This is because the Eleventh Circuit has repeatedly rejected either identical or substantially similar arguments. In *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1010 (11th Cir. 2020), the Court stated in *dicta* that jobs requiring a reasoning level of two "are not" inconsistent with an RFC limitation to simple, routine and repetitive work. In *Peterson v. Comm'r of Soc. Sec.*, No. 21-10086, 2021 WL 3163662, at *3 (11th Cir. July 27, 2021), the Eleventh Circuit cited to *Valdez* and "conclude[d] that there was no apparent conflict between an RFC limitation to simple, routine, repetitive tasks and the DOT's description of jobs requiring level two reasoning." Finally, in *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323 (11th Cir. 2021), the Court offered a more-general holding, noting that "[u]nlike the contradiction between the terms 'occasionally' and 'frequently' at issue in *Washington*, 'simple' does not plainly contradict 'detailed.'"

In the Commissioner's response, she does not offer any argument on whether the ALJ's RFC is at conflict with the job of sales attendant, which requires a reasoning level of three. Instead, the Commissioner contends that even if there is error concerning that job, it is harmless because Cortaza's ability to perform the other two jobs -- marker and cafeteria attendant -- which both require only level two reasoning, means that there are still 377,000 jobs in the national economy which he can perform. [ECF No. 25].

Even if an ALJ errs in determining that a claimant can perform certain jobs, the District Court may still affirm the decision of the ALJ provided there are a sufficient number of jobs available for the remaining jobs which the claimant can perform. *Thomas v. Comm'r of Soc. Sec.*, 497 F. App'x 916, 920 (11th Cir. 2012) (finding harmless error where, after the jobs inconsistent with the claimant's RFC were removed, there were still sufficient jobs existing in the economy for the remaining jobs to support a finding that the claimant was not disabled). The 377,000 available jobs for the two remaining positions identified by the VE are sufficient to meet the ALJ's step five burden. *Valdez*, 808 F. App'x at 1010 (78,000 jobs nationwide were sufficient to meet the ALJ's step five burden); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 935 (11th Cir. 2015) (44,400 jobs nationwide were sufficient to meet the ALJ's step five burden); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (80,000 jobs nationwide were sufficient to meet the ALJ's step five burden).

Further, Cortaza appears to abandon this argument, as his reply contains no additional argument nor any mention of this issue. Therefore, because the ALJ's RFC does

not contain an apparent conflict with jobs requiring a reasoning level of two and the number of available jobs for the marker and cafeteria attendant positions are sufficient to meet the Commissioner's step five burden, the Undersigned finds that there is no basis for remand on this ground.

**C.**    Ground Three

Cortaza next argues that remand is warranted because the ALJ's hypothetical to the VE (and the corresponding RFC) is deficient because it did not account for his moderate paragraph B mental health limitations. He offers very little legal support on this issue and relies on only a single purportedly factually relevant case to argue his point. Otherwise, his argument is that "[t]he law on this issue is clear" and then a repeat of his introductory statement that the ALJ failed to present to the VE her paragraph B mental health limitations or otherwise account for the limitations in her RFC.

The Commissioner's response also offers very little specifics concerning her contention that the ALJ's RFC is sufficient. Instead, the Commissioner says merely that "the ALJ generously accommodated [Cortaza's] 'moderate' paragraph B limitations with the ability to, at most: frequently interact with supervisors, coworkers, and the public; complete simple, routine, repetitive tasks, but not at a production rate or pace; maintain concentration for at least two hours at a time; and would need to be off task no more than 10% of the workday." The Commissioner also notes that the job of marker involves no talking or hearing, and the job of cafeteria attendant involves only occasional talking or

hearing.

Cortaza offers no new argument in his reply and simply repeats his assertion that the ALJ is required to "properly account for her own findings acknowledging [his] moderate limitations" and since the limitations were not presented to the VE, "the resulting decision is not legally sufficient nor otherwise based on substantial evidence." Cortaza cites to the same cases he relied upon in his initial motion.

Both parties rely on *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011), which remanded a case "[b]ecause the ALJ asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for [Winschel's moderate limitations in maintaining concentration, persistence, and pace]." The Commissioner notes that *Winschel* does not mandate that an ALJ make explicit references to paragraph B limitations and, instead, holds that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Id.* at 1180.

The ALJ afforded the opinions of State agency Drs. Gildegardo Allen and Theodore Weber "great weight." (R. 82). Dr. Allen determined that Cortaza had "moderate" limitations to maintaining "social functioning" and "concentration, persistence, or pace. (R. 262). He also found that Cortaza had a moderate limitation to

"understand and remember detailed instructions" and to "respond appropriately to changes in the work setting." (R. 267-68). Despite these limitations, Dr. Allen determined that Cortaza could "understand, retain and carry out simple structured task activity, and consistently perform routine simple tasks with minimal supervision." (R. 269).

Dr. Weber determined that Cortaza had "moderate" limitations to maintaining "social functioning" and "concentration, persistence, or pace." (R. 288). He also found that Cortaza had a moderate limitation to "understand and remember detailed instructions" and to "respond appropriately to changes in the work setting." (R. 293-94). Despite these limitations, Dr. Weber determined that Cortaza could "understand, retain and carry out simple structured task activity, and consistently perform routine simple tasks with minimal supervision." (R. 295).

The medical evidence here -- unlike that in *Winschel* -- supports a finding that Cortaza can perform to the level provided in the RFC despite the ALJ's paragraph B findings. Accordingly, there is no basis for remand on this ground. *See Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 713 (11th Cir. 2015) ("[T]he ALJ accounted for Mr. Duval's moderate limitations in concentration, persistence, or pace by limiting him to simple, routine, and repetitive tasks, which medical evidence showed he could perform.").

**D.**   Ground Four

Next Cortaza argues that the "ALJ improperly equates a mental status examination with any ability to work and to sustain work." He says that because "the ALJ makes

18

medically significant conclusions about Cortaza's mental status examinations which she is not qualified to make, her functional assessment is improper." In this argument, not only does Cortaza fail to offer any legal authority, but he also fails to identify which statements or findings the ALJ made which he alleges are improper and includes no citations to the record. Further, when given the opportunity to elaborate on the issue in his reply, Cortaza merely repeated the previous attorney rhetoric from his initial motion.

This issue was raised in a perfunctory manner with no legal or factual analysis and should be rejected on that ground. *Astrue*, 495 F.3d at 1287 n.13 (refusing to address a "perfunctory and underdeveloped argument" with no citation to legal authority and collecting cases).

**E.**    Ground Five

Cortaza's next argument concerns the weight the ALJ afforded to opinions from examining physicians Dr. Camacho, Dr. Cunliffe, and Dr. Siskind. [ECF No. 22]. Cortaza avers that "[n]either the facts nor the law support the ALJ's rejection" of these "medical source opinions." *Id.*

Cortaza's argument contains an amalgam of both the pre-March 27, 2017 regulations and the regulations in effect for claims filed on or after March 27, 2017. As the Commissioner notes in her response, the Court cannot "selectively pick [ ] parts of the prior and new medical evidence regulations and apply them to [a] case." [ECF No. 25 (citing *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1324 (11th Cir. 2020) (stating "[b]ecause

the new regulation does not apply to Noble's case, we do not take it into account or address it further.")].

Cortaza's claim was filed on March 10, 2016. For claims filed before March 27, 2017, ALJs assess medical opinions under a different set of criteria than those filed on or after March 27, 2017. 20 C.F.R. § 416.927 ("For claims filed (see [20 C.F.R.] § 416.325) before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 416.920c apply."). Thus, the Undersigned will evaluate Cortaza's arguments under only the pre-March 27, 2017 regulations.

Under the pre-March 27, 2017 regulations, the ALJ is required to give the medical opinions of treating physicians substantial or considerable weight unless good cause justifies a contrary finding. *Winschel*, 631 F.3d at 1179 ("Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians substantial or considerable weight." (quotation omitted)). Good cause to discount a treating physician's opinion exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.*

The ALJ assigned the following weight to Cortaza's examining physicians: Dr. Camacho (some weight); Dr. Cunliffe (little weight); and Dr. Siskind (little weight) (R. 81-83).

1.    Dr. Camacho

20

Cortaza says that it was improper for the ALJ to find that Dr. Camacho's opinion that Cortaza has a "moderate" reaching limitation "of little probative value." Specifically, Cortaza takes issue with the ALJ's statement that Dr. Camacho fails to define moderate -- despite using moderate in his own decision -- and because the ALJ fails to incorporate the objective imaging studies which corroborate Dr. Camacho's opinion.

Both arguments can be rejected. First, as the Commissioner notes, the ALJ found that Cortaza has a "severe" right shoulder impairment yet still found Cortaza capable of frequently reaching above his right shoulder based on other medical examinations. Second, the existence of objective medical imaging showing damage to a body part is not assistive in determining whether the claimant can work. Addressing a similar argument, the Eleventh Circuit stated the following:

> To a large extent, Moore questions the ALJ's RFC determination based solely on the fact that she has varus leg instability and shoulder separation. However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work").

*Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

Cortaza's reply fails to address these very specific and on-point responses by the Commissioner and makes an unsupported allegation that "Defendant fails to address Mr. Cortaza's specific arguments regarding the ALJ's improper rejection of the medical source opinions of consultative examiner, Dr. Camacho, and so those arguments remain

unrefuted." [ECF No. 28].

The ALJ referenced numerous medical records which directly address the functionality of Cortaza's right shoulder. (R. 621 (acknowledging some limits to Cortaza's right shoulder but opining that Cortaza enjoys 5/5 strength in his upper extremities); 885 (Cortaza's physical examination indicates that he can operate within normal limits); 897 (normal musculoskeletal range of motion and normal musculoskeletal strength). Cortaza's argument that Dr. Camacho's opinion should be afforded more weight is unsupported by the facts or law and his contention that Dr. Camacho would have disagreed with the ALJ's findings is nothing more than speculation.

Accordingly, the Undersigned finds no error in the ALJ's assessment of Dr. Camacho's opinion.

### 2.   Dr. Cunliffe

Cortaza argues that the ALJ erred in rejecting Dr. Cunliffe's opinion that Cortaza "does not appear capable of functioning at a level sufficient for productive full-time employment." Although Cortaza does not cite any specific law in this area of his motion, much of his argument centers around the ALJ's purported failure to address the "supportability" of Dr. Cunliffe's opinion "as the regulations require."

There is no magic formula or script which an ALJ must follow. *Jamison v. Bowen*, 814 F.2d 585, 588–89 (11th Cir. 1987) ("We do not require that ALJs necessarily cite to particular regulations or cases; nor do we require the use of particular phrases or

formulations."). It is sufficient that the Court "be able to determine what statutory and regulatory requirements the ALJ did in fact apply." *Id.* Further, in evaluating a treating source under 20 C.F.R. § 416.927, "the ALJ is not required to explicitly address each of [the regulation's] factors." *Id.*

The question is whether "good cause" supports rejecting a medical source's opinion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Here, as "good cause," the ALJ cited myriad medical records detailing Cortaza's objective mental functioning, such as observations of normal memory, above-average intelligence, cooperative behavior, appropriate interactions with medical staff, fair attention and concentration, intact thought process, fair insight and judgment, and good impulse control. (R. 82; 640-41; 644; 658; 714-15; 800-01; 821; 833-34; 950; 995-96; 1310; 1341-42; 1436).

Further, the ALJ correctly observed that Dr. Cunliffe mistakenly believed Cortaza's alcohol use disorder was in full remission in rendering his opinion (R. 83; 716) -- a belief undermined by contemporaneous treatment notes indicating otherwise (Tr. 83; 658; 930) -- and a mistake which undermines Dr. Cunliffe's contention that "[Cortaza] did not appear to be engaged in attempts to manipulate the examiner."

Further, although the ALJ provided good cause for discounting Dr. Cunliffe's opinion, as the Commissioner notes in her response, Dr. Cunliffe is a non-treating doctor who is not entitled to deference or special consideration. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (ALJ does not have to defer to opinion of a physician who conducted

a single examination); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) (same); *Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 842 (11th Cir. 2013) (same).

At bottom, there is extensive, durational medical records which contradict Dr. Cunliffe's (a doctor who met with Cortaza only once) opinions. Cortaza's argument demonstrates only that there is evidence which might support a different conclusion; it does not demonstrate a lack of substantial evidence supporting the ALJ's conclusion. Further, Cortaza has failed to provide any legal authority supporting his contention that the ALJ must have discussed in detail the contents of Dr. Cunliffe's report, which lead to the ultimate conclusion the ALJ found unpersuasive.

Accordingly, the Undersigned finds no error in the ALJ's rejection of Dr. Cunliffe's opinion.

### 3.    Dr. Siskind

Cortaza's arguments on why the ALJ purportedly erred in her assessment of Dr. Siskind's opinion are similar and, at times, identical to those arguments raised in connection with Dr. Cunliffe. First, Cortaza repeats his contention that the "generalized mental status examinations" elsewhere in the record cannot serve as a basis to contradict Dr. Siskind's findings because "such mental status evidence is undefined and provides no evidence of actual functional ability." Second, Cortaza takes the position that the ALJ erred in finding that Dr. Siskind's analysis is flawed because Dr. Siskind did not consider Cortaza's substance abuse in reaching her conclusion. Finally, Cortaza claims that the ALJ

erred by not engaging in a supportability analysis. As noted before Cortaza cites no legal authority to support his position on these doctor-specific arguments.

The first and third argument are nearly identical to the arguments Cortaza raised in the section of his motion discussing Dr. Cunliffe. In her discussion concerning Dr. Siskind, the ALJ again cites to numerous records which document that Cortaza intact memory, fair attention and concentration, above average intelligence, normal behavior, and denied inappropriate or antisocial behavior. (R. 83; 714; 726; 800-01; 821; 833-34; 996; 1310; 1341-42; 1436). For the same reasons the Undersigned rejected Cortaza's argument that the ALJ was *required* to explicitly refer to Cunliffe's findings and use the term supportability and rejected Cortaza's argument that this other objective medical evidence is of no value, the Undersigned also rejects the arguments as applied to Dr. Siskind.

In Cortaza's remaining argument, he says that the ALJ's criticism of Dr. Siskind's failure to discuss Cortaza's substance abuse fails to consider that his abuse is "of a periodic nature and likely has had long-term deleterious effects on his memory function" and "the evidence [ ] demonstrates that [Cortaza's] substance abuse was actually in remission" at the time of the testing.

The first argument is merely attorney rhetoric and insufficient to undermine the ALJ's reasoning. The second argument is also speculation. Cortaza cites to an October 2018 report which states that his drug abuse is in full remission. (R. 1436). However, as of July 2018, Cortaza was still using drugs and alcohol (R. 1428) and in March 2019 he

reported alcohol and marijuana use. (R. 1516). Thus, it cannot be said that Cortaza's substance abuse was in full remission during Dr. Siskind's January 2019 exam. Further, it is not an incorrect statement for the ALJ to note that Dr. Siskind ignores entirely Cortaza's lengthy history of substance abuse in reaching her conclusions.

Finally, as with Dr. Cunliffe, Dr. Siskind saw Cortaza only a single time. Thus, her opinion is not entitled to any deferential treatment.

For these reasons, the Undersigned determined that the ALJ did not err in her assessment of Dr. Siskind's opinion.

### 4.   Conclusion

The ALJ's evaluation of Dr. Camacho, Dr. Cunliffe, and Dr. Siskind's opinions is supported by substantial evidence. Cortaza has failed to supply any legal authority supporting his view that a more-detailed analysis is required when evaluating a doctor's opinion under the applicable regulations. Nor has Cortaza refuted any of the Commissioner's well-taken arguments. Accordingly, there is no cause for remand on this ground.

### F.   Ground Six

In Cortaza's sixth argument, he turns his attention to Dr. Juneo, Dr. Alidon, and Dr. Weber, the state agency physicians whose opinions the ALJ gave "great weight." Cortaza contends that the ALJ erred because these doctors did not have access to all of Cortaza's medical records -- including Dr. Siskind's report (which, as discussed

previously, the ALJ afforded "little weight" to) -- and because these three doctors did not personally evaluate Cortaza. [ECF No. 22]. Cortaza also contends that the doctors, on many occasions, determined that there was insufficient evidence to render an opinion. Cortaza cites no law in support of his argument.

The Commissioner responds that although the state agency physicians did not review all the evidence, neither did any of the other doctors, including those whose opinions Cortaza claims should be afforded more weight. According to the Commissioner, the ALJ did not take the opinions of these doctors at face value and discussed her reasoning by listing the myriad corroborative evidence in the record supporting the doctors' assessments. The Commissioner highlights that the ALJ also reviewed all the evidence -- unlike any of the other doctors -- and determined Cortaza's limitations, at time concluding that Cortaza was more limited than the state agency doctors opined.

Cortaza's reply fails to offer any legal authority or any additional argument. The Undersigned's own research, however, has revealed multiple cases which undermine Cortaza's argument. *See, e.g., Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (finding that an ALJ did not afford undue weight to a non-examining doctor where the doctor cited several portions of the record in support of her conclusions, and the ALJ, who makes the ultimate determination, had access to the entire record, including the claimant's testimony); *Hatley v. Kijakazi*, No. 6:20-CV-1881-JRK, 2022 WL 1617502, at *4

(M.D. Fla. May 23, 2022) (rejecting the claimant's arguments that the state agency doctors' opinions were deficient because they had not reviewed all evidence and noting that "the ALJ's [d]ecision makes clear that she appropriately considered medical evidence post-dating the physicians' opinions and assigned a more restrictive RFC as a result"); *Williams v. Colvin*, No. CV414-043, 2016 WL 6133845, at *3 (S.D. Ga. Oct. 20, 2016), report and recommendation adopted, No. CV416-043, 2016 WL 6652451 (S.D. Ga. Nov. 9, 2016) (rejecting claimant's argument that reviewing physicians were not entitled to "some weight" because their opinions were based on an incomplete record).

Accordingly, because Cortaza raised this argument in a perfunctory manner and because it also fails on the merits, there is no basis for remand based on the weight afforded by the ALJ to the three state agency doctors.

**G.**    Ground Seven

Here, Cortaza argues that because the ALJ discounted the opinions of the medical sources which evaluated him, then the ALJ's decision cannot be supported by substantial evidence. In his view, the ALJ has taken on the role of doctor and chosen to interpret raw medical data to reach her own conclusion. Cortaza says that this must be true because the ALJ discounted the opinions of the doctors who personally evaluated him, which means that there is no longer an acceptable source by which the ALJ can reach her conclusion.

Cortaza relies on several cases which support the proposition that an ALJ must give treating sources controlling weight and that an ALJ may not arbitrarily substitute

her judgment for that of a medical professional.

However, as discussed above, the ALJ's rejection of the opinions of the three doctors who evaluated Cortaza is supported by "good cause," which means that her decision is not arbitrary. Nonetheless, Cortaza contends that the ALJ, without those opinions, has no opinion remaining which can constitute substantial evidence. In Cortaza's view, the three state agency doctors are *per se* insufficient sources.

As support for this proposition, Cortaza cites to *Coleman v. Barnhart*, 264 F. Supp. 2d 1007, 1010 (S.D. Ala. 2003), which states that an ALJ's fifth-step burden cannot be met "by the residual functional capacity assessment of a non-examining, reviewing physician, but instead must be supported by the residual functional capacity assessment of a treating or examining physician." In a more-recent decision, another Alabama District Court noted the district's condemnation of *Coleman*:

> *Coleman* is most assuredly not the last word on this issue. In *Packer v. Astrue*, —— F.3d ——, 2013 WL 593497 (S.D. Ala. Feb.14, 2013), Chief Judge Granade rejected the absolutism of *Coleman*, noting that "numerous court [sic] had upheld ALJ's RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician." *Id.* at *3. Like those other courts, this court rejects *Coleman's* seemingly mandatory requirement that the Commissioner's fifth-step burden must be supported by an RFC assessment of a physician.

*Webb v. Colvin*, No. 3:12CV506-CSC, 2013 WL 2567556, at *5 (M.D. Ala. June 11, 2013) (alteration added); *see also Lombana v. Saul*, No. 1:19-CV-23873-KMM, 2020 WL 5633684, at *10 (S.D. Fla. Aug. 20, 2020), report and recommendation adopted, No. 1:19-CV-23873-KMM, 2020 WL 5632710 (S.D. Fla. Sept. 18, 2020) (collecting cases and recognizing that

multiple courts in this Circuit have rejected *Coleman*).

Further, as the Commissioner argues, the ALJ relies on both the objective medical evidence as well as the opinions of the non-examining sources, who thoroughly discussed Cortaza's ailments. Tellingly, Cortaza does not readdress this argument again in his reply. Thus, because Cortaza has effectively waived the issue and because the Commissioner's position is well taken, there is no basis for remand on this ground.

**H.**    <u>Ground Eight</u>

Cortaza next contends that the ALJ erred by not considering the side effects of his medication. He says that the evidence, including his hearing testimony, supports a finding that his medication causes weakness, tiredness, drowsiness, dizziness, and headaches.

The Commissioner argues that the ALJ was not required to consider side effects because Cortaza failed to establish any medication-related side effects. As support, the Commissioner cites to *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 367 (11th Cir. 2010), which offers the following discussion,

> [G]iven the record, the ALJ was not under a duty to elicit further information about Walker's medication side effects. Nothing in Walker's testimony suggested that her headaches and dizziness were severe enough to be disabling either alone or in combination with her other impairments. Apart from her own subjective statements, there is no evidence in the record that any of Walker's other symptoms actually were caused by her medications.

The records which Cortaza cites do not conclusively establish disabling side effects

related to his medication [ECF No. 22 (citing R. 573 (a disability report completed by his representative listing the same side effects for all nine medications and revealing uncertainty over which medication caused the side effect); 712 (which contains no discussion of side effects); 746 (noting drowsiness as a side effect which "may have implications for working")] , nor did his application aver that any of these purported side effects -- weakness, tiredness, drowsiness, dizziness, or headaches -- precluded him from working.

Cortaza does not address this argument in his reply, which should be deemed as waiving the issue. Accordingly, because the Commissioner's argument is well taken and Cortaza failed to offer any rebuttal, there is no basis for remand on this ground.

I.     Ground Nine

As his final argument, Cortaza contends that the appeals council erred in its consideration of newly-submitted evidence which was unavailable during the hearing before the ALJ. Following the hearing, Cortaza obtained additional records related to an April 2019 bicycle accident, consisting of treatment records, including numerous imaging studies from two sources, and records related to an outpatient spinal surgery. In Cortaza's view, this evidence is "relevant" and "warrants changing the ALJ's decision." He says that the Appeals Council "summarily determined, without explicit explanation, [that] the evidence would not change the outcome of this case" or that certain records were "outside the relevant time period."

Cortaza cites no legal authority in support of his arguments.

The Commissioner refers to Cortaza's arguments as a "generalized challenge" and says they should be rejected. The Commissioner points out that in the actual functionality areas of the records, Cortaza is recorded as having a normal range of motion, 5/5 motor strength, and his back was "nontender." [ECF No. 25 (citing (R. 181))]. These findings, according to the Commissioner, demonstrate that the records do not establish that Cortaza suffers from "greater limitations than the ALJ's already-restrictive RFC finding during the relevant period."

Further, the Commissioner argues that the Appeals Council was correct in finding that Cortaza's Deerfield records -- which stem from a motor vehicle accident in December 2019, after the ALJ's decision -- were chronologically irrelevant. In order for Cortaza to establish error, he must show that these records offer new, material information concerning his condition during the relevant period. *See McGriff v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 469, 472 (11th Cir. 2016) ("Evidence is chronologically relevant if it relates to the period on or before the date of the ALJ hearing decision."); *Ring v. Soc. Sec. Admin., Comm'r*, 728 F. App'x 966, 969 (11th Cir. 2018) (finding post-decision evaluation chronologically irrelevant where, *inter alia*, it "appears to relate to the worsening of a condition or the onset of a new condition after the date of the ALJ's decision").

Cortaza's reply offers no additional argument, nor does it offer any legal authority. Instead, Cortaza continues to rely upon pure attorney rhetoric. For example, Cortaza cites

32

to R. 201 and states that "the imaging studies from Jackson Health show that Mr. Cortaza suffers from degenerative changes of the pelvis and left hip, including enthesopathic changes of the pubic rami, vascular calcifications, and left Os acetabuli, *all of which are likely to cause pain when walking, sitting, and standing*." [ECF No. 28 (emphasis added)]. However, R. 201 contains no mention of Cortaza's statements concerning the *effects* of these injuries.

To provide a factually-simple analogy. If a claimant tore his ACL in 2013, received surgery, and medical records in 2014 demonstrated that the claimant could walk, then a 2015 MRI after a car accident, which confirmed the earlier ACL injury, would not impact an ALJ's finding that the claimant could walk in 2014. In fact, the presence of the prior injury also would have no import over a finding on whether the claimant could walk following the accident unless there was some mention in the medical records that the claimant's ability to walk had been impacted by the accident.

Cortaza does not cite to any records which discuss his ability to function -- either physically or mentally. And, as discussed earlier, "the mere existence of [an impairment] does not reveal the extent to which [the impairment might] limit [a claimant's] ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6.

Much of Cortaza's briefing on this issue claims that these records are "relevant." However, the question is not whether the new records are "relevant"; it is whether there is "additional evidence that is new, material, and relates to the period on or before the

33

date of the hearing decision, and there is a *reasonable probability that the additional evidence would change the outcome of the decision.*" 20 C.F.R. § 416.1470(a)(5) (emphasis added).

Cortaza has not shown that the Appeals Council erred in determining that there was no reasonable probability the newly-submitted evidence would change the outcome of the decision. Therefore, there is no basis for remand on this ground.

## VI. Conclusion

The Undersigned **respectfully recommends** that the District Court **deny** Cortaza's summary judgment motion, **grant** the Commissioner's summary judgment motion, and enter final judgment in favor of the Commissioner.

## VII. Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, Miami, Florida, on February

3, 2023.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
The Honorable Roy K. Altman
All counsel of record